IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JUSTIN S.,

                          Plaintiff,

            v.                              Civil Action No.
                                            3:19-CV-0177 (DEP)

ANDREW M. SAUL, Commissioner of Social
Security,[1]

                          Defendant.

_____

<u>APPEARANCES</u>:                        <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>

LACHMAN, GORTON LAW FIRM        PETER A. GORTON, ESQ.
P.O. Box 89
1500 E. Main Street
Endicott, NY 13761-0089

<u>FOR DEFENDANT</u>

HON. GRANT C. JAQUITH             JOSHUA L. KERSHNER, ESQ.
United States Attorney for the    Special Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

[1]      Plaintiff's complaint named Nancy A. Berryhill, in her capacity as the Acting
Commissioner of Social Security, as the defendant. On June 4, 2019, Andrew M. Saul
took office as Social Security Commissioner. He has therefore been substituted as the
named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil
Procedure, and no further action is required in order to effectuate this change. *See* 42
U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[2]  Oral argument was conducted in connection with those motions on February 4, 2020, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

---

[2]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1)     Plaintiff's motion for judgment on the pleadings is GRANTED.

2)     The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)     The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)     The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

_____
David E. Peebles
U.S. Magistrate Judge


Dated:     February 6, 2020
           Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
JUSTIN S.,

                         Plaintiff,

vs.                              5:19-CV-177

NANCY A. BERRYHILL, COMMISSIONER OF
SOCIAL SECURITY,


                         Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on February 4, 2020, at the

James Hanley Federal Building, 100 South Clinton

Street, Syracuse, New York, the HONORABLE DAVID E.

PEEBLES, United States Magistrate Judge, Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:      LACHMAN, GORTON LAW FIRM
                    Attorneys at Law
                    1500 East Main Street
                    Endicott, New York  13761-0089
                      BY:  PETER A. GORTON, ESQ.

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of the General Counsel
                    Region II
                    26 Federal Plaza - Room 3904
                    New York, New York  10278
                      BY:  JOSHUA L. KERSHNER, ESQ.


        *Jodi L. Hibbard, RPR, CSR, CRR*
        *Official United States Court Reporter*
             *100 South Clinton Street*
           *Syracuse, New York  13261-7367*
                 *(315) 234-8547*

1          (In Chambers, Counsel present by telephone.)

2          THE COURT:  Plaintiff has commenced this proceeding

3     seeking judicial review of an adverse determination by the

4     Commissioner pursuant to 42 United States Code Sections

5     405(g) and 1383(c)(3).

6          The background is as follows:  The plaintiff was

7     born in May of 1983, he is currently 36 years old.  The

8     plaintiff lives in Lisle, New York.  He also sees -- he's

9     alone but he sees his daughter, his eight-year-old daughter,

10    she was eight in November of 2017, every other week.  He is

11    6 feet tall, weighs between 155 and 165 pounds although at

12    one point he was as low as 120 pounds, that's at 80, page 80

13    of the administrative transcript.  Plaintiff is a high school

14    graduate, has no further education.  He drives and owns a

15    car.

16          Plaintiff, his past work includes, as a pizza

17    delivery person, a dishwasher and kitchen helper, a landscape

18    worker, and a grocery store stock clerk.  Plaintiff has been

19    on SSI or Supplemental Security Income payments since

20    October 16, 2008 as a result of his diagnosis of Crohn's

21    disease, both large and small bowel.  He was diagnosed in

22    October of 2008.  His symptoms include bleeding, diarrhea,

23    abdominal pain, nausea, weight loss, and fatigue.  Plaintiff

24    treats with Binghamton Gastroenterology Associates; Dr. Mark

25    Shumeyko is his primary point of contact there.  He has been

1  in the past prescribed Prednisone although he was weaned off

2  of that particular medication in 2010.  He undergoes Remicade

3  infusions every eight weeks.  He has also been prescribed

4  Flexeril, omeprazole, and Lialda.  The Crohn's disease by all

5  accounts is somewhat stable but susceptible of flare-ups, at

6  least according to the plaintiff and some of the treatment

7  records.

8          As was discussed during argument, in May of 2016

9  plaintiff underwent a colonoscopy.  One of the findings as a

10  result of that colonoscopy was that the Crohn's appears

11  completely quiescent at this time.  That appears at page 322

12  and 377 of the record.

13          In terms of activities of daily living, plaintiff

14  is able to cook, clean, watch television, watch his daughter,

15  mow the lawn if necessary, shop, he visits family and he

16  listens to the radio.

17          Procedurally, plaintiff applied for Title II and

18  Title XVI benefits on October 16, 2008, alleging a disability

19  onset date of May 31, 2006.  He received an unfavorable

20  decision on September 27, 2010 from Administrative Law Judge

21  Thomas Tielens in connection with that application.  The

22  Social Security Administration Appeals Council remanded the

23  matter on February 3, 2012.

24          On August 17, 2012, Administrative Law Judge John

25  Ramos issued a decision awarding SSI benefits only with an

onset date finding of October 16, 2008.  He did not award

Title II benefits because apparently it was after the date of

last-insured status.

On February 7, 2017, an agency determination was

made that plaintiff was no longer disabled.  On June 27,

2017, that finding was upheld on request for reconsideration.

On November 16, 2017, Administrative Law Judge Jeremy Eldred

conducted a hearing concerning the finding of medical

improvement.  He subsequently issued a decision on January 8,

2018 finding that plaintiff had undergone sufficient medical

improvement and was capable of performing available work in

the national economy.

(Telephone connection disrupted and resumed.)

THE COURT:  So I went through the procedural

history and I was about to recount Judge Eldred's decision

from November 16, 2017, except that I have the wrong date.

I'm sorry, that was the date of the hearing.  January 8,

2018.  I note that the Social Security Administration Appeals

Council denied request for review of that determination on

December 19, 2018.  In his decision, ALJ Eldred focused on

medical improvement, applied what he determined was the

appropriate seven-step test for confronting a claim of

medical improvement.  He -- are you still there, Mr. Gorton?

MR. GORTON:  I am here.

THE COURT:  Okay.  Mr. Kershner, are you still

1  there?

2         MR. KERSHNER:  I am, your Honor.

3         THE COURT:  All right, I heard ringing in the

4  background, I was afraid we'd lost someone.

5         He found that the point of comparison for

6  considering improvement was August 17, 2012.  He determined

7  that plaintiff does suffer, continue to suffer from a severe

8  impairment, namely Crohn's disease.  He concluded that it did

9  not meet or medically equal any of the listed presumptively

10 disabling conditions set forth in the regulations.  He found

11 medical improvement had occurred as of February 7, 2017.

12 After considering the medical evidence in the record, ALJ

13 Eldred concluded that plaintiff retains the residual

14 functional capacity, or RFC, to perform a full range of light

15 work without any nonexertional limitations.  Based on that

16 finding, he concluded that plaintiff, although not able to

17 perform his past relevant work, based on the Medical

18 Vocational Guidelines and specifically Grid Rule 202.20, a

19 finding of no disability was directed and therefore plaintiff

20 was not disabled at the relevant times.

21        As you know, my task is limited and the standard

22 which I apply is extremely deferential.  I must determine

23 whether correct legal principles were applied and the

24 determination is supported by substantial evidence.  It is --

25 substantial evidence is defined as such relevant evidence as

a reasonable mind might accept as adequate to support a
conclusion. It's a very deferential standard, more stringent
even than clearly erroneous.

Under *Brault v. Social Security Administration*, 683
F.3d 443, a Second Circuit decision from 2012, facts
determined by an administrative law judge can be rejected
only if a reasonable fact finder would have to conclude
otherwise.

In this case, plaintiff raises several contentions.
He argues that plaintiff -- the ALJ, I'm sorry, failed to
assess the frequency and duration of needed bathroom breaks
resulting from his Crohn's disease, failed to give
controlling weight to the opinions of Dr. Mark Shumeyko,
plaintiff's treating gastroenterologist, and improperly
substituted her lay opinion -- his lay opinion for the
uncontradicted medical opinions in the record.

Plaintiff also questions reliance on the Grids in
light of the nonexertional limitations resulting from
plaintiff's Crohn's disease.

The medical improvement is governed by both statute
and regulation. When a finding of disability results in the
granting of benefits, under the Social Security Act the
Commissioner is statutorily required to engage in a
continuing periodic review of a claimant's condition. If,
based on that review, the Commissioner determines that the

1    disabling condition has subsided, does not exist, or is not

2    disabling, he may order termination of the benefits.  That's

3    under 42 United States Code Sections 421 and 423.

4            In making the review to determine whether cessation

5    of benefits is warranted, the Commissioner must examine the

6    plaintiff's current condition, a term ordinarily requiring

7    assessment of the condition at the time of the hearing.

8    Generally speaking, under Section 423(f) and the

9    corresponding regulations, termination of benefits is

10   appropriate if there's been medical improvement related to

11   the claimant's ability to work.  Where the claimant's medical

12   condition improves to the extent that he or she can engage in

13   substantial gainful activity, the party will no longer be

14   entitled to benefits under the Act.

15           In order to support the termination of benefits, it

16   is the Commissioner who must meet the burden by a showing of

17   substantial evidence that a medical improvement has taken

18   place in a claimant's ability to perform work activity.

19   Medical improvement is defined by both statute and

20   regulation, specifically 20 CFR Section 404.1594, and it is

21   defined as any decrease in the medical severity of an

22   impairment.  To find medical improvement, the Commissioner

23   must compare the prior and current medical evidence to

24   determine whether there have been any changes in the signs,

25   symptoms, and laboratory findings associated with the

1  claimant's impairment.

2       If there has been medical improvement, the

3  Commissioner must also, as plaintiff's counsel acknowledges,

4  focus on whether the improvement is related to the claimant's

5  ability to perform work.  20 CFR Section 404.1594.  A medical

6  improvement will be related to the claimant's ability to work

7  where it results in a decrease in the severity of the

8  impairment present at the time of the most favorable recent

9  medical decision, and an increase in the claimant's

10  functional capacity to perform basic work activities defined

11  to include the ability to do most jobs such as walking,

12  standing, pushing, pulling, reaching, carrying, hearing,

13  speaking, remembering, and using judgment.  Even if and where

14  medical improvement related to a claimant's ability to work

15  has occurred, in most cases the Commissioner must also show

16  the claimant is able to engage in substantial gainful

17  activity before he will be found no longer disabled.

18       The standard for finding medical improvement has

19  been outlined including in my colleague Chief Magistrate

20  Judge Andrew T. Baxter's decision in *Michael M. v.*

21  *Commissioner of Social Security*, reported at -- well, it's

22  not reported but it can be found at 2019 WL 530801.

23       There's no question that the administrative law

24  judge in this case applied the correct test; the real

25  conundrum is whether the resulting finding was supported.

1          In this case it boils down to an analysis of the

2     frequency and duration of the need for bathroom breaks.

3     There is obviously no limitation in that regard in the

4     administrative law judge's residual functional capacity

5     finding.  In this case, there are several medical opinions in

6     the record.  Plaintiff himself testified to his condition and

7     his need for frequent bathroom breaks.  His treating

8     physician, Dr. Shumeyko, on September 27, 2017 opined at

9     page 566 that the condition could interfere with plaintiff's

10    ability to attend work on a regular basis.  Possibly when

11    flaring, he may need urgent bathroom access and it also would

12    entail unscheduled breaks possibly when the disease flares,

13    although last year it showed fairly good control.

14          Dr. Jenouri, the consultative examiner, who

15    examined the plaintiff on November 4, 2016, concluded at

16    page 357, "The claimant is restricted due to marked schedule

17    disruptions due to frequent bowel movements.  Otherwise no

18    physical limitations."

19          The findings of the agency nonexamining consultant,

20    Dr. Putcha, in December of 2016 makes the following notation

21    at page 363:  "Due to frequency of bathroom use due to dx

22    Crohn's, claimant should be near to restroom."

23          There is also an opinion from a treating

24    physician's assistant, Susan Anderson, September 25, 2017 at

25    page 581.  She also finds that regular attendance would be

impaired due to plaintiff's Crohn's during flares, and that
the patient would sometimes need to take unscheduled restroom
breaks.  Again at page 581.

So all of the medical evidence in the record
suggests, at least during flare-ups, that there will be a
need for frequent medical -- restroom, I'm sorry, breaks.

The Commissioner cites to a colonoscopy that
occurred on May 20, 2016, page 322, that indicates that the
Crohn's is completely quiescent at this time.  I note,
however, that that procedure predates all of the opinions
that I just gave, including Dr. Putcha and Dr. Jenouri.
There's no question that there should have been a discussion
of the need for plaintiff to undergo bathroom breaks due to
his -- due to his condition.

The matter was addressed by the court in *Lowe v.
Colvin*, 2016 WL 624922, that's from the Western District of
New York, Senior District Judge Michael A. Telesca, in 2016
requiring -- noting that an ALJ failed in that case to make
specific findings regarding the frequency and length of
anticipated bathroom breaks.  Also similarly in *Spaulding v.
Astrue*, 702 F.Supp.2d 983 from the Northern District of
Illinois, 2010, making a similar finding.

It may well be that plaintiff's condition is
properly characterized as episodic.  He testified to
flare-ups every month after infusions, although at page 51 he

1    could have meant every two months which is when he receives

2    infusions.  He keeps underwear in his car.  He testified to

3    what occurs during an episode.  The fact that it's episodic

4    doesn't necessarily mean that it is not disabling.  *Beck v.*

5    *Colvin*, 2013 WL 5533571, it is from the Western District of

6    New York, 2013.  There's no question that the exertional

7    finding of light work is supported, that's certainly not in

8    issue.  The issue -- and there's no question that there has

9    been some improvement in plaintiff's condition.  The real

10   issue is bathroom breaks.

11          ALJ Ramos in his RFC included that he would require

12   being regularly provided one unscheduled break per workday,

13   five to ten minutes in duration with immediate access to a

14   bathroom and that supported his finding of disability based

15   on a vocational expert's testimony at 68, 69.  ALJ Eldred

16   doesn't make the same finding or explanation.  The vocational

17   expert at page 57 did testify that an employer would only

18   tolerate unscheduled breaks for a day or two here and there,

19   two to four extra breaks would not be tolerated, 10 percent

20   off task would not be tolerated and eight absences per year

21   would not be tolerated.

22          In light of the fact that it was defendant's burden

23   to show medical improvement and the ability to perform work

24   functions, I find that that was not met, that the ALJ should

25   have addressed the need for bathroom breaks and the need to

1    be near a bathroom.  There should be a remand with careful

2    consideration of the need for plaintiff during flare-ups to

3    have bathroom breaks, how often, with what frequency, with

4    what duration.  So I don't find persuasive evidence of

5    disability, but I will grant judgment on the pleadings to the

6    plaintiff and remand the matter to the agency for further

7    consideration consistent with this opinion.

8            Thank you both for excellent, excellent

9    presentations, I hope you have a good day.

10           MR. GORTON:  Thank you, your Honor, sorry for the

11   phone stuff, I don't know what was going on.

12           THE COURT:  Okay, all right, take care.

13               (Proceedings Adjourned, 3:37 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

 5    Official Realtime Court Reporter, in and for the

 6    United States District Court for the Northern

 7    District of New York, DO HEREBY CERTIFY that

 8    pursuant to Section 753, Title 28, United States

 9    Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                    Dated this 5th day of February, 2020.

17

18

19                    /S/ JODI L. HIBBARD

20                    JODI L. HIBBARD, RPR, CRR, CSR
                      Official U.S. Court Reporter
21

22

23

24

25
```